DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| Hy-Ko Products Company, | ) | CASE NO. 5:10 CV 992 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | <u>MEMORANDUM OPINION AND</u> |
| v. | ) | <u>ORDER</u> |
|  | ) |  |
| The Hillman Group, Inc., et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

Presently before the Court is plaintiff Hy-Ko Products Company's amended motion for sanctions pursuant to Rule 11 of the Federal Rules for Civil Procedure against defendant Kaba Ilco Corp., and defendant Kaba Ilco's counsel, Honigman Miller Schwartz and Cohn LLP and Schottenstein Zox and Dunn.  ECF 59.  Plaintiff Hy-Ko claims that Counts I and II of defendant Kaba Ilco's counterclaim violate Rule 11 and that sanctions are appropriate.  Plaintiff has requested that the Court conduct an evidentiary hearing with respect to the motion for sanctions.

Defendant Kaba Ilco has opposed Hy-Ko's amended motion for sanctions on the grounds that Hy-Ky misstates the applicable legal standard and offers no factual support for its assertions. ECF 65.  Hy-Ko has replied (ECF 66) and Kaba Ilco has filed a sur-reply (ECF 68).

For the reasons contained herein, plaintiff Hy-Ko's amended motion for sanctions is DENIED.

A.    <u>Rule 11 Safe Harbor Provision</u>

Rule 11(c)(2) establishes the requirements that must be met by a party moving for sanctions, which includes serving the motion on the opposing party and waiting for twenty-one (21) days before filing the motion for sanctions with the Court.  Hy-Ko served the "original

(5:10 CV 992)

version" of its motion for sanctions on Kaba Ilco in connection with Kaba Ilco's Amended

Answer, Affirmative Defenses, and Counterclaim (ECF 53).

In response, Kaba Ilco advised Hy-Ko that it would not agree to dismiss Count I of its

counterclaim because Kaba Ilco believes Hy-Ko's legal analysis is incorrect.  Kaba Ilco further

refused to dismiss Count II on the same basis, however, qualified its response as follows:

> After further evaluating the counterclaim [Count II], however, we will withdraw Count II with respect to the design mark referenced in ¶18(b) of our counterclaim, but for reasons other than those raised by your letter and proposed motion.  Please let us know whether you will stipulate to a voluntary dismissal without prejudice and without costs of Count II to that limited extent.

ECF 59-1.

Hy-Ko did not oppose Kaba Ilco's proposal, and paragraph 18 of Kaba Ilco's Second

Amended Answer, Affirmative Defenses, and Counterclaim does not include the design mark[1]

previously contained in paragraph 18(b) of Kaba Ilco's counterclaim.  However, the word mark

which was included in paragraph 18(a) of Kaba Ilco's Amended Answer, Affirmative Defenses,

and Counterclaim, U.S. Reg. No. 3,606,484, remains included in paragraph 18 of Kaba Ilco's

Second Amended Answer, Affirmative Defenses, and Counterclaim.

It is Hy-Ko's position that because the amended motion for sanctions asserts the same

grounds for relief as the "original motion" for sanctions previously served on Kaba Ilco, it has

satisfied the requirements of Rule 11(c)(2) with respect to the amended motion (ECF 59 (citing

*Ideal Instruments , Inc. v. Rivard Instruments, Inc.,* 243 F.R.D. 322, 340 (N.D. Iowa 2007))).

Kaba Ilco does not dispute that Rule 11's safe harbor provision has been satisfied.

---

[1] U.S. Reg. No. 3,606,485.

2

(5:10 CV 992)

B.      The Pleadings

        1.      *Hy-Ko's Complaint*

According to plaintiff's complaint, defendant Hillman Group was the sole provider of key duplication machines in "Big Box" retailers in the United States.  Plaintiff alleges it developed its own key duplication machine which it introduced into the market in 2007.  There is a patent dispute between Hy-Ko and Hillman presently pending before the Court in Case No. 5:08 CV 1961.  With respect to defendant Kaba Ilco, plaintiff claims that Kaba Ilco is the largest manufacturer of replacement key blanks in the world and supplies defendant Hillman with replacement key blanks.  ECF 1, par. 7.

In its complaint, Hy-Ko alleges that defendants Hillman Group and Kaba Ilco have engaged in "a pattern and practice of continuing unlawful anticompetitive conduct" intended to preserve their monopolies and exclude Hy-Ko from the key duplication market, and that consumer prices for replacement keys have been artificially elevated, technological innovation for automatic key machines has been suppressed, and consumer choices among competing suppliers curtailed in violation of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2) and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26).   ECF 1.  In addition to plaintiff's federal antitrust claims in counts I through VI of the complaint, plaintiff also alleges in count VII conspiracy and restraint of trade in violation of the Valentine Act, Ohio Revised Code §§ 1331.01 *et seq.*, in particular, Ohio Revised Code § 1331.04.  ECF 1.

(5:10 CV 992)

In support of these allegations, Hy-Ko contends, among other things, that Hillman tried to stop Wal-Mart from using Hy-Ko's machine by telling Wal-Mart that Hy-Ko's machine infringed Hillman's patent.  In addition, Hy-Ko alleges that Hillman offered predatory bundled rebates to independent hardware stores and wholesalers to target sale of Hy-Ko's other product lines, including letters, numbers and signs ("LNS") in order to cut off Hy-Ko's revenues from product sales and drive up Hy-Ko's cost of doing business.  ECF 1, par. 5-6.

With respect to defendant Kaba Ilco, plaintiff alleges that through illegal means, Kaba Ilco has maintained a monopoly on the replacement key market in the United States, including Big Box retailers and independent hardware retailers such as True Value Hardware and Ace Hardware.  Hy-Ko claims that "[s]ince at least 2003 when [Hy-Ko] achieved its first significant competitive success against Ilco, Ilco has engaged in a pattern of continuous retaliatory anticompetitive conduct designed to exclude [Hy-Ko] from the market for replacement key blanks, and it has thereby suppressed competition, stabilized prices, limited output and stifled innovation in the market for replacement key blanks."  ECF 1, par. 7.

In addition, plaintiff alleges that defendants Hillman and Kaba Ilco have conspired to restrain trade and retain their respective monopolies through allocation of markets and customers and joint exclusionary conduct with respect to the sale of replacement key blanks.  At a minimum, Hy-Ko claims that defendants Hillman and Kaba Ilco have conspired to exclude Hy-Ko from supplying replacement key blanks to the True Value Hardware buying cooperative.  ECF 1, par. 8.

4

(5:10 CV 992)

    2.    *Kaba Ilco's Counterclaim*

Defendant Kaba Ilco asserts a three count counterclaim against plaintiff Hy-Ko.  ECF 58.

    a.    **False and misleading statements**

Defendant Kaba Ilco alleges in its counterclaim that in 2003, Ace Hardware awarded its

key blank warehouse business to plaintiff Hy-Ko.  Previously, Kaba Ilco had supplied key blanks

to the Ace Hardware warehouse and many Ace Hardware retailers.  According to Kaba Ilco,

"Ilco has supplied many Ace hardware retailers for decades.  Ilco has established a solid

relationship with many of the retailers, who appreciate Ilco's high quality products, the broad

range of its key blank line, and its timely delivery and excellent customer service. [Ace

Hardware retailers may purchase their products through the warehouse or may purchase directly

from vendors.]  Ilco had a reasonable expectation of continuing to obtain business from many

Ace Hardware retailers even after losing the warehouse business."  ECF 58, par. 12.

Kaba Ilco claims that after obtaining the Ace Hardware warehouse business, plaintiff

Hy-Ko sent written materials to Ace Hardware retailers to persuade them to purchase from

Hy-Ko, which Kaba Ilco alleges contained willful false and misleading statements that misled

and deceived Ace Hardware retailers in order to take sales from Kaba Ilco.  These allegedly

willful false and misleading statements included statements that Hy-Ko's key machine was

easier to use (Kaba Ilco claims the machines work in the same manner), that for the first time

retailers could download data through the ACENet system (Kaba Ilco claims that its system had

the same capability), that Hy-Ko claimed to have 850 different key blanks available (Kaba Ilco

claims that Hy-Ko's program only included 418 basic key blanks), that Hy-Ko claimed its

5

(5:10 CV 992)

carbide cutter would last seven times longer than a standard key cutter (Kaba Ilco claims that carbide is too brittle to withstand the manual operational pressure required in the Hy-Ko machine), and that Hy-Ko claimed its key blanks were "engineered by Hy-Ko" and "produced by Hy-Ko's tooling" (Kaba Ilco claims that Hy-Ko's key blanks were manufactured in Taiwan). ECF 58, par. 13-15.  Kaba Ilco alleges that these false statements misled and deceived Ace Hardware retailers and caused them to purchase from Hy-Ko when they would have otherwise continued purchasing from Kaba Ilco.  Count I of Kaba Ilco's counterclaim asserts a claim of false advertising, designation of origin and unfair competition under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), alleging that Hy-Ko made false and misleading statements regarding its service, key blanks, and key cutting machines which influenced the decision of Ace Hardware retailers to purchase key blanks form Hy-Ko, which caused economic harm to defendant Kaba Ilco.

      b.     **Trademark infringement**

Kaba Ilco claims that it has used the term "EZ" and the phrase "ILCO EZ" since 1972, and sells key blanks and related goods under these "EZ trademarks."  In addition, Kaba Ilco sells key blanks and related goods under the federally registered mark, ILCO EZ® "Registered EZ Mark."  Defendant Kaba Ilco alleges in its counterclaim that plaintiff Hy-Ko promotes a series of key blanks labeled with a "Hy-Ko EZ No." generally referred to as an "EZ Number."  Kaba Ilco claims that Hy-Ko's use of EZ is deliberately designed to cause consumer confusion and infringes Kaba Ilco's EZ trademarks.

6

(5:10 CV 992)

Count II of Kaba Ilco's counterclaim alleges that Hy-Ko's use of EZ in connection with its key reproduction business infringes Kaba Ilco's "Registered EZ Mark" in violation of the Lanham Act (15 U.S.C. § 1125(a)).  In counterclaim count III, Kaba Ilco asserts a common law trademark infringement and unfair competition claim against plaintiff Hy-Ko in connection with Hy-Ko's alleged use of "EZ."

C.    <u>Amended Motion for Sanctions</u>

Hy-Ko advances three arguments in support of its contention that Kaba Ilco and its counsel failed to meet their responsibilities under Rule 11 with respect to counts I and II of Kaba Ilco's counterclaim against Hy-Ko.  First, Hy-Ko argues that Kaba Ilco's claim for false advertising under the Lanham Act (count 1) is "indisputably time-barred."  Second, Hy-Ko argues that Kaba Ilco's infringement claim (count II) is based on a federal trademark registration with dates of filing and first use after Hy-Ko's alleged infringement began.  And third, Hy-Ko alternatively argues that counts 1 and II are baseless claims knowingly presented by Kaba Ilco and its counsel to harass Hy-Ko, and to delay and increase the cost of litigation.

1.    *Hy-Ko claims statute of limitations bars count 1 of Kaba Ilco's counterclaim*

Kaba Ilco claims in count 1 that Hy-Ko engaged in false advertising under the Lanham Act after Hy-Ko won Ace Hardware's warehouse business 2003 when Hy-Ko sent written materials to Ace Hardware retailers to persuade them to purchase from Hy-Ko.  Kaba Ilco does not specifically identify or attach the written materials at issue and does not specify a date these materials were sent to Ace Hardware retailers except to indicate that the materials were sent after Hy-Ko won the Ace Hardware warehouse business in 2003.

7

(5:10 CV 992)

In support of its motion for sanctions, Hy-Ko attaches the declaration of Michael Bass, Hy-Ko's President and CEO.  ECF 59-2.  Paragraphs 9 through 16 of Bass' declaration (ECF 59-2) refers to two FAQ brochures (attached to Bass' declaration) which Hy-Ko assumes are the basis for Kaba Ilco's counterclaim count 1, and asserts that the FAQ brochures were distributed at trade shows in 2003 and 2004.[2]  Bass Dec. (ECF 59-2), par. 12 and 13.  Bass further declares that "a reasonable opportunity for further investigation or discovery likely will uncover supporting evidence [that] Ilco had contemporaneous knowledge of the contents of Hy-Ko's FAQ brochures and an opportunity to respond to any statements by H-Ko that it deemed false or misleading . . . [and] likely will uncover supporting evidence [that] Ilco was aware of the contents of the first of the two FAQ brochures no later than February 2004."  Bass Dec. (ECF 59-2), par. 15 and 16.

Hy-Ko contends that the statute of limitations to be applied to Kaba Ilco's false advertising claims under the Lanham Act is two years, and that as a result, Kaba Ilco's counterclaim is time-barred:

> With no provision of the Lanham Act governing time limitation of claims, courts  look to the limitation period applicable to the analogous claim under the law of the forum state to determine whether the Lanham Act how claim is time-barred.  For a federal court in Ohio, the limitation period applied to a Lanham Act claim for false advertising is two years.
> *Logan Farms v. HBH, Inc. DE,* 282 F. Supp. 2d 776, 790 (S.D. Ohio 2003).

Hy-Ko's Memorandum in Support of Amended Motion for Sanctions, ECF 59-5, p. 2.

---

[2] "Although these FAQ brochures do not actually state what Ilco alleges they say in Counterclaim paragraph 13(a)-(d), it appears that Ilco based its allegations on statements in one or both of the FAQ brochures."  Bass Dec. (ECF 59-2), par. 12.

(5:10 CV 992)

The declaration of Michael Bass reflects that Hy-Ko's belief  that "an opportunity for further investigation and discovery will likely uncover supporting evidence that . . . Ilco was aware of the contents of the first of the two FAQ brochures no later than February 2004."  On that basis, Hy-Ko argues that count 1 of Kaba Ilco's counterclaim is time-barred, and that "it is equally clear that any reasonable inquiry into the legal sufficiency of counterclaim count 1 as mandated by Rule 11 could have resulted in no conclusion other than that the claim is time-barred."  *Id.*  Kaba Ilco responds Hy-Ko is applying the wrong law and that the doctrine of laches, and not a two-year statute of limitations, governs the question of whether count 1 of Kaba Ilco's counterclaim is barred.

> 2.  *Hy-Ko claims that because Kaba Ilco's registered trademark*
> *was filed and reflects a first use after Hy-Ko's alleged infringing use,*
> *Kaba Ilco's infringement claim (count 2) is barred*

In count II of its counterclaim, Kaba Ilco asserts that Hy-Ko has infringed its "Registered EZ Mark" in violation of 15 U.S.C. § 1125(A).[3]  Hy-Ko contends that  Kaba Ilco and its counsel violated Rule 11 with respect to count II because the application date and first use date of the Registered EZ Mark occurred long after Hy-Ko's alleged infringement of the EZ mark began. Kaba Ilco does not dispute that paperwork for the Registered EZ Mark reflects certain dates, but disputes the legal effect of those dates relative to Hy-Ko's alleged infringing use of the

---

[3] Kaba Ilco defines the "Registered EZ Mark" in paragraph 18 of its counterclaim as follows: "Ilco sells key blanks and related goods under the trademark ILCO EZ®.  Ilco owns various U.S. federal trademark registrations for the ILCO EZ® trademark, including but not limited to U.S. Reg No. 3,606,484 for the word mark ILCO EZ.  This trademark is registered for use with: 'Door hardware, namely, keys and key cylinders; metal key blanks; metal key fobs; metal keys for locks; metal locks and keys therefor.' Ilco will refer to this trademark as the 'Registered EZ Mark.'"

9

(5:10 CV 992)

Registered EZ Mark.  Specifically, Kaba Ilco claims that ILCO EZ was used by Kaba Ilco long

prior to federal registration and Hy-Ko's alleged use of Kaba Ilco's mark, and that is Kaba Ilco's

actual use of the mark, and not the dates identified in the federal registration, that controls the

outcome of counterclaim count 2.  Both sides cite extensive case law, and refer to United States

Patent and Trademark Office manuals, in support of their respective positions regarding the

effect of Kaba Ilco's federal trademark application and first use dates for the Registered EZ

Mark on Kaba Ilco's claims that Hy-Ko has infringed ILCO EZ.

D.      <u>Law and Analysis</u>

      1.      *Rule 11*

Rule 11(b) of the Federal Rules of Civil Procedure requires that an attorney make a

reasonable inquiry with respect to pleadings presented to the Court to ensure, among other

reasons, that the pleading is not presented for an improper purpose, that legal claims are

warranted by existing law, and that factual contentions have evidentiary support or will likely

have such support upon discovery.[4]  Sanctions may be imposed when these requirements are

violated.  *See Indah v. U.S. S.E.C.*, 661 F.3d 914, 926 (6th Cir. 2011).

While "the assessment of Rule 11 sanctions must comport with procedural due process, a

separate hearing on a motion for Rule 11 sanctions is not necessarily required."  *Davis v. Crush*,

862 F.2d 84, 88 (6th Cir. 1988).  In this case, the parties have thoroughly briefed the issues and

the Court concludes that an evidentiary hearing is not required to afford the parties due process

with respect to plaintiff's motion for sanctions.

---

[4] Rule 11(b)(1)-(3).

10

(5:10 CV 992)

Rule 11(b) requires counsel to make "an inquiry reasonable under the circumstances" before signing an presenting a pleading to the Court, and the conduct of counsel subject to a sanction request is measured by an objective standard of reasonableness under the circumstances.  *Merritt v. Int'l Assn of Machinists and Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (citing *INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.,* 815 F.2d 391, 401 (6th Cir. 1987));  *First Bank of Marietta v. Hartford Underwriters Insurance Company*, 307 F.3d 501, 517 (6th Cir. 2002) ("imposition of Rule 11 sanctions requires a showing of 'objectively unreasonable conduct.'" (quoting *United States v. Kouri-Perez*, 187 F.3d 1, 8 (1st Cir. 1999))). "The objective reasonableness standard has been adopted to eliminate any empty-head pure-heart justification for patently frivolous arguments." *Neighborhood Research Institute v. Campus Partners for Community Urban Development*, 212 F.R.D. 374, 378 (S.D. Ohio 2002)(internal quotations omitted) (quoting Fed.R.Civ.P. 11 advisory committee notes (1993 Amendments)); *Huntsman v. Perry Local Schools Board of Education*, 2008 WL 5146546 at * 2 (N.D. Ohio)("The fundamental purpose of Rule 11 sanctions is to 'deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts.'" (quoting *Cooter & Gell v. Hartmarx Corp.,* 496 U.S.  384, 393 (1990))).  "Sanctions are awarded where an attorney pursues claims that he should know are frivolous." *Moross Limited Partnership v. Fleckenstein Capital, Inc.,* 466 F.3d 508, 520 (6th Cir. 2006).

Factors to consider in determining whether a reasonable inquiry has occurred include: a) the time available for investigation; b) whether the attorney signing the pleadings had to rely on the client for underlying facts; and c) whether the pleading was based on a plausible view of the

11

(5:10 CV 992)

law. *Davis v. Crush*, 862 F.2d 84, 88 (6th Cir. 1988). Whether counsel's behavior was objectively reasonable is a mixed question of fact and law. *Id.* at 88 (quoting *Century Products Inc v. Sutter*, 837 F.2d 247, 253 (6th Cir. 1988)).

The decision to grant or deny a motion for Rule 11 sanctions is left to the sound discretion of the Court. *Freshwater v. Mount Vernon City School Dist. Bd. of Educ.*, 2009 WL 4283113 at *1-2 (S.D. Ohio 2009) (citing *Davis v. Crush*, 862 F.2d 84, 88 (6th Cir. 1988)). "In determining whether Rule 11 has been violated by counsel, 'district courts must strike a delicate balance between protecting the adversary system and not allowing attorneys to exploit the system for their own purposes.'" *Freshwater v. Mount Vernon City School Dist. Bd. of Educ.*, 2009 WL 4283113 at *2 (citing *Davis v. Crush*, 862 F.2d at 89 ("the Rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories")); "Nor should Rule 11 motions be prepared . . . to intimidate an adversary into withdrawing contentions that fairly debatable. . ." Advisory Comm. Notes to 1993 Amendments to Fed.R.Civ.P. 11.

2. *Statute of Limitations for Lanham Act False Advertising Claims*

The Lanham Act does not include a statue of limitations. *Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2d 362, 365 (6th Cir. 1985). In the absence of a statute of limitations in the Act, courts have applied the equitable doctrine of laches to determine if a claim is time-barred.[5] "Under equitable principles the statute of limitations applicable to analogous actions at law is

---

[5] In the Sixth Circuit, "laches is understood to be a 'negligent and unintentional failure to protect one's own rights' *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.,* 936 F.2d 889, 894 (6th Cir. 1991). 'A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it.' *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.,* 270 F.3d 298, 320 (6th Cir. 2001)."

(5:10 CV 992)

used to create a 'presumption of laches.'  This principle 'presumes' that an action is barred if not brought within the period of the statute of limitations and is alive if brought within the period." *Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2d at 365.

In this case, the starting point of the laches analysis is the analogous statute of limitations of Ohio, the forum state.  *Rocky Brands, Inc. v. Red Wing Shoe Co., Inc.,* 2008 WL 4771848 at * 4 (S.D. Ohio)(citing *Natron Corp v. STMicroelectronics, Inc.,* 305 F.3d 397, 408 (6th Cir. 2002)).  In Ohio, the analogous state statute of limitations for a Lanham Act claim for false advertising is the two year limitation applicable to bodily injury or damage to personal property in ORC § 2305.10.  *Rocky Brands, Inc. v. Red Wing Shoe Co., Inc.,* 2008 WL 4771848 at * 4 (citing *Logan Farms v. HBH Inc. DE,* 282 F. Supp. 2d 776, 790 (S.D. Ohio 2003)).

The two year period begins to run when the party asserting the false advertising claim "has actual or constructive knowledge of the conduct which allegedly [violated the Lanham Act.]"  *Rocky Brands, Inc. v. Red Wing Shoe Co., Inc.,* 2008 WL 4771848 at * 4 (citing *Natron Corp v. STMicroelectronics, Inc.,* 305 F.3d at 408).  If the action is not brought within the two-year limitation period, there is a "strong presumption" the delay was prejudicial and unreasonable.  *Rocky Brands, Inc. v. Red Wing Shoe Co., Inc.,* 2008 WL 4771848 at * 4 (citing *Natron Corp v. STMicroelectronics, Inc.,* 305 F.3d at 408).  However, this presumption may be rebutted.  *Rocky Brands, Inc. v. Red Wing Shoe Co., Inc.,* 2008 WL 4771848 at * 6 (citing *Natron Corp v. STMicroelectronics, Inc.,* 305 F.3d at 409).

13

(5:10 CV 992)

    3.     *Analysis*

        a.     **Kaba Ilco's filing of count I was not objectively unreasonable**

Rule 11 requires a reasonable inquiry into whether claims are warranted by existing law and factual contentions have evidentiary support, or will likely have evidentiary support after a reasonable opportunity for discovery.  Rule 11(b)(2)-(3).  Kaba Ilco alleges that after Hy-Ko won a portion of the Ace Hardware business from Kaba Ilco in 2003-2004, Hy-Ko violated the Lanham Act by making false and misleading statements of facts regarding the merits of Hy-Ko's services and products which damaged Kaba Ilco.  Hy-Ko argues that Kaba Ilco's claim for false advertising is barred by a two year statute of limitations.

Whether Kaba Ilco's claim is time barred is determined by the doctrine of laches.  The starting point of the laches analysis is the analogous state statute of limitations, which in Ohio, is two years.  However, that two year period is not dispositive and simply creates a framework for the laches analysis and certain presumptions that may be rebutted.  In any event, that two year period begins to run when Kaba Ilco had actual or constructive knowledge of Hy-Ko's conduct at issue.

There is nothing in the record at this time that establishes as a threshold matter that Kaba Ilco had actual or constructive knowledge of the alleged false statements at issue in 2003-2004.  Hy-Ko's principal officer states in his declaration that "further investigation or discovery likely will uncover supporting evidence" that Kaba Ilco had "contemporaneous knowledge" of and an opportunity to respond to statements by Hy-Ko that Kaba Ilco deems false and misleading.

(5:10 CV 992)

However, when Kaba Ilco knew of the allegedly false and misleading statements is only the first step in a laches analysis even if Mr. Bass' declared belief turns out to be correct.  The road to deciding whether count 1 of Kaba Ilco's counterclaim is time-barred by the doctrine of laches will be a long one requiring multiple determinations, including a determination as to when Kaba Ilco had knowledge of the allegedly offending statements, if any delay in filing was excusable, and whether Hy-Ko was prejudiced by any such delay.  *Laukis v. Rio Branks, Inc.,* 391 Fed. Appx. 416, 422 (6th Cir. 2010)(the essence of a laches defense is prejudice to the defendant through unconscionable delay in asserting the claim).

Kaba Ilco contends that any delay in filing Count I was neither unreasonable nor prejudicial to Hy-Ko.  First, Kaba Ilco argues that Hy-Ko's antitrust complaint itself places the 2003-2004 time period at issue, minimizing or defeating any claim of prejudice by Hy-Ko due to the passage of time.   Kaba Ilco further argues that it was not unreasonable for Kaba Ilco to have considered the expense of litigation and made a business decision at the time not to pursue the allegations of counterclaim count I in a stand-alone lawsuit, but to decide now that the calculation has changed having been brought into a lawsuit by Hy-Ko over related facts during that same time period.

Both sides make arguments of fact and law that merit consideration with respect to the analysis of the laches issue.  However, the Court finds, for the purpose of Rule 11 analysis, that all of these factors weigh against a determination that counterclaim count 1 is "obviously" time-barred.  It may be that Hy-Ko will ultimately prevail in their argument that count 1 of Kaba Ilco's counterclaim is barred the doctrine of laches.  But at this time, in the context of a Rule 11

(5:10 CV 992)

motion, the Court does not find that counterclaim count I is patently frivolous or that Kaba Ilco's counsel was objectively unreasonable in filing count I.  Accordingly, the Court concludes that Kaba Ilco has not violated Rule 11 by filing counterclaim count 1.

> **b.**      **Kaba Ilco's filing of count II was not objectively unreasonable**

Just as the parties dispute the case law and factual basis for Hy-Ko's claim that count I of Kaba Ilco's counterclaim is so obviously time-barred that it violates Rule 11, so the parties dispute the facts and trademark case law with respect to the question of whether the date of Kaba Ilco's federal trademark application and registered "first use" defeats Kaba Ilco's trademark infringement claim against Hy-Ko in counterclaim count 2.  Rule 11 prohibits conduct that is patently frivolous.  The Court has examined the case law and legal argument cited by both parties and finds that the parties present plausible positions, and each argument has merit. Against that background, the Court concludes that Kaba Ilco's position is not objectively unreasonable.   Which side will ultimately prevail with respect to count II of Kaba Ilco's counterclaim remains to be decided.  However, the Court does not conclude at this juncture that count II is patently frivolous.  Accordingly, the Court concludes that Kaba Ilco did not violate Rule 11 in filing counterclaim count II.

E.      Conclusion

For the reasons stated above, the Court finds that Kaba Ilco was not objectively unreasonable in filing counts I and II of its counterclaim, and concludes that Rule 11 has not been violated.  As a consequence, the Court does not conclude that counts I and II were filed for an improper purpose in violation of Rule 11.

(5:10 CV 992)

Accordingly, Hy-Ko's amended motion for sanctions is DENIED.

This case remains scheduled for a status conference on April 11, 2012 at 12:00 noon.

IT IS SO ORDERED.

_  March 14, 2012 _____                    _    s/ David D. Dowd, Jr. _____
Date                                           David D. Dowd, Jr.
                                               U.S. District Judge

17